## Willis v. Warren.

(Decided May 21, 1926.)

### Appeal from Madison Circuit Court.

1. Appeal and Error—Where Litigated Question was Correct Location of Boundary Line, and Transcript did Not Contain Title Papers, Which were Before Trial Court, Judgment will be Affirmed. —Where litigated question was correct location of boundary line, which could only be determined by calls in deed under which parties claimed, and transcript did not contain recent conveyances in plaintiff's chain of title, nor any title papers of defendant, Court of Appeals will assume that judgment of lower court, which had such papers before it, was correct.

2. Appeal and Error—Where Litigated Question was Location of Boundary Line, Appellant, to Secure Review of Trial Court's Decision, had Duty to See that Transcript Included Title Papers.— Where litigated question was location of boundary line, which could only be determined by calls in deed under which parties claimed, it was appellant's duty, if he desired to secure review of trial court's decision, to see that transcript included such title papers.

WALLACE & WIGGINS, for appellant.

JOHN NOLAND and GRANT E. LILLY, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Appellee filed his action against appellant, alleging that he was the owner of a tract of land of about 117 acres in Madison county on the Kentucky river at a point where that stream, as it formerly ran, was the dividing line between the counties of Madison and Jessamine. He alleges that the defendant had within five years entered upon a tract of 18 acres embraced within the plaintiff's boundary, which 18 acres is called an island, and that defendant had plowed the same and converted the same to his own use, at the time wrongfully and untruthfully claiming to be the owner of one-half the said island, when in fact he owned no part thereof.

The defendant was the owner of a tract of land on the Jessamine side of the river, and filed his answer merely denying that he had claimed to be the owner of only one-half of the island mentioned, and denied that he had been making pretentions to ownership of one-half of the same, or that he did not own any part of it.

The court by agreement of parties entered an order appointing a surveyor to ascertain and report the line between the parties, and in so doing to ascertain and lay down the center of the old channel of the river as it formerly ran.

After the surveyor had filed his report of survey and a plat therewith in which he fixed and designated on his plat the channel of the stream as it formerly ran, the plaintiff filed an amended petition asserting that the line so designated as the old channel of the river was the dividing line between the plaintiff and defendant, and made the report of the surveyor a part of his amendment.

The defendant then filed an amended answer wherein he asserted title to the tract of land lying between the channel of the old river bed, and what is known in the record as the Crooks line, which 4 1/5 acres is the land in controversy. He alleges that plaintiff has no title to the land and never has been in possession of it and denies that it is a part of the 117 acres described in the plaintiff's petition.

The court in its judgment adopted the old channel of the river as the line between the parties and entered a judgment accordingly, and from that judgment the defendant has appealed.

The facts developed are that up to about 1902 the river, as it then ran, was the dividing line between Madison and Jessamine counties, but at or about that time there was constructed some miles down the river, by the federal government, a dam which caused the backwater to be above the point in controversy, and in some way this changed the channel of the river at that point so that the river now runs at that point wholly through Madison county, and leaves about 18 or 20 acres apparently on the Jessamine county side, and leaves the old river bed dry. This old river bed has filled up since the change in the channel, and the controversy seems to be as to the title of the two landowners to the river bed.

The plaintiff in his evidence says he files as a part of it copies of the deed to himself, to his immediate grantor,

and all title papers back to the Commonwealth, but we find copied in the transcript only five title papers, they being old ones and embracing much larger tracts of land but which probably embrace the land in controversy; but the latest date of any one of the title papers copied in the transcript is the 22nd day of September, 1853, that being a conveyance from William J. Smith and wife to Ross and Tudor, and that conveyance calls for a tract of 206¼ acres of land which apparently embraces the land in controversy. But there is copied in the transcript no conveyance since that date bearing upon the title, although we gather from the record that such conveyances were before the lower court.

Nor do we find in the transcript any title papers of the defendant whatever, and nothing in the evidence to indicate that he ever filed any.

Where the correct line between the parties necessarily depends upon the calls in their papers, and it is apparent that from the transcript as it stands this court cannot determine the correct line, we will assume that as the lower court had those title papers before it, its judgment is correct.

Whether the title of plaintiff or defendant ran to the thread of the stream, as it formerly ran, can only be determined from the calls in the deeds under which they claim, none of which are copied in the transcript. Obviously it was the duty of appellant in bringing to this court the transcript of the proceedings in the lower court, to see that there was incorporated in it such things as raised the questions upon which he relies for a reversal.

It is urgently insisted for appellant that plaintiff showed no title to the 4 1/5 acres of land in controversy, and that, therefore, he having no title, was improperly adjudged to have his title quieted. But whether he had title to the disputed 4 1/5 acres must likewise be determined from the calls in his deed, which are not here, and we must again assume that the lower court had ample authority to enter the judgment it did.

Something is said in briefs about a cross-appeal, but we fail to find that any cross-appeal has ever been prayed for or granted.

Judgment affirmed.